UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:20-CR-58-KAC-HBG |
| EVERETT EUGENE MILLER, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation as may be appropriate. This case is before the Court on the Defendant's Motion to Exclude Expert Testimony of FBI Agent Adrienne Isom [Doc. 79], filed on October 29, 2021. Defendant Miller asks the Court to exclude the testimony of Agent Isom on grooming children for sexual abuse. He argues that this testimony infringes on the province of the jury, is not relevant, and is unreliable. Moreover, Defendant contends that even if the Court finds the testimony to be relevant and reliable, the Court should exclude the testimony, because its prejudicial effect substantially outweighs any probative value it might have.

The parties appeared before the undersigned on November 15, 2021, for a hearing on this motion. Assistant United States Attorney Matthew T. Morris represented the Government. Assistant Federal Defenders Jonathan A. Moffatt and Nakeisha C. Jackson represented Defendant Miller, who was also present. The Government presented the testimony of Federal Bureau of Investigation ("FBI") Special Agent ("SA") Adrienne Isom. Counsel for both parties presented argument. At the conclusion of the hearing, the Court took the matter under advisement. For the

reasons discussed herein, the Court finds no basis to exclude the proposed expert testimony of SA Isom.

I.  POSITIONS OF THE PARTIES

Defendant Miller is charged [Doc. 55] with using a facility of interstate commerce to entice and attempt to entice a minor to engage in sexual activity that constitutes a criminal offense under state law (Count 1), transporting a minor in interstate commerce with intent to engage in sexual activity that constitutes a criminal offense under state law (Count 2), committing a felony involving a minor while required to register as a sex offender (Count 3), and escape or attempted escape from custody (Count 4).

The Government disclosed its intent to use the expert testimony of SA Adrienne Isom at trial [Doc. 75]. It states that SA Isom will testify about (1) the definition of grooming and the stages of the grooming process, (2) example behaviors of offenders during the grooming process, and (3) the impact of grooming on the child, the caregivers, the community, and the offender [Doc. 75, p. 4]. The Government contends that SA Isom is qualified to testify as an expert on the grooming of minors based on her specialized knowledge, training, and experience.

Defendant Miller asks the Court to exclude the expert testimony of SA Isom, arguing her testimony infringes on the province of the jury and is not relevant or reliable [Doc. 79]. Defendant contends SA Isom's testimony will not assist the jury in understanding the evidence or determining a fact at issue and is not relevant, because facts in this case are not complex and this is a matter the jury can evaluate without expert assistance. He challenges the reliability of SA Isom's testimony, contending her testimony is not based on sufficient facts or data and is the product of unreliable principles and methods. Finally, Defendant asks the Court to find the unfair prejudice from SA

2

Isom's testimony substantially outweighs its probative value pursuant to the balancing test in Federal Rule of Evidence 403.

The Government responds [Doc. 80] that SA Isom's expert testimony on grooming minors for sex is admissible under Federal Rule of Evidence 702. It contends that it will not ask SA Isom if Defendant Miller was grooming the victim in this case for sex. Instead, SA Isom will discuss how perpetrators behave during the grooming process and the effect of grooming on victims and caregivers. It asserts that this testimony will help the jury understand Defendant's facially innocuous behavior and the teenage victim's counterintuitive behavior.

## II.     SUMMARY OF TESTIMONY

The Government presented the testimony of FBI Special Agent Adrienne Isom, who stated that she has an undergraduate degree in criminal justice and master's degrees in criminology and forensic psychology. She has been a special agent with the FBI for nineteen years. She has worked in the Behavioral Analysis Unit ("BAU"), which focuses on crimes against children, for ten years. She provides operational support to federal, state, local, and tribal law enforcement in investigating crimes against children. Examples of the operational support that she provides are reviewing cold cases, providing interview strategies, or providing media strategies. Prior to her work on the BAU, she was a field agent in Los Angeles, California, working on a task force that investigated child exploitation. She has performed undercover work online, engaging in conversations with suspected sex offenders. She also worked for seven years as a probation officer for juveniles.

SA Isom testified that she received 400 hours of classroom training for the BAU. She also received on-the-job training and has consulted with mentors. She has been trained in the online grooming of children. She has taught training courses for law enforcement at national conferences on the exploitation of children. SA Isom stated she is certified to conduct behavioral analysis for

3

the FBI and has investigated hundreds of child sex offense cases. She agreed that some of these cases involved grooming behavior. She has interviewed numerous child sex offenders and has reviewed interviews of child sex offenders. As a probation officer, SA Isom supervised juvenile sex offenders.

SA Isom testified that grooming is a "constellation of behaviors" designed to gain the cooperation of the child. These behaviors can vary but allow the offender to build a trusting relationship with the child. The offender may give gifts, love, or attention to the child, either in person or in text messages. SA Isom stated that the goal of grooming is the sexual gratification of the offender, while maintaining secrecy. SA Isom testified that grooming involves counterintuitive behaviors. The victim of grooming often feels "co-opted into their victimization," which causes the victim to not disclose the abuse. SA Isom stated that grooming can involve other behaviors, such as the offender inserting himself into an organization or family to gain access to the child. An offender may isolate the child from caregivers or other people so that the child will not feel they have others to whom they can report the abuse. An offender may "pile on" to the child's concerns about caregivers. SA Isom stated that she has not reviewed any of the communications between the victim and Defendant Miller.

On cross-examination, SA Isom testified that she has always worked in support of law enforcement agencies and her presentations are mainly to law enforcement organizations. She agreed that there is already a case with a suspect by the time she is involved. SA Isom stated that while she believes there is sufficient evidence to charge Defendant Miller based upon the Indictment, she has made no determination of his guilt. She cannot quantify how many of the child abuse investigations in which she has participated have involved grooming. She agreed that she has worked on cases involving child pornography, both with and without contact with a child.

She said she had interviewed many defendants in child abuse cases as either as the case agent or assisting the case agent. SA Isom said she has only interviewed one defendant while working on the BAU. She has reviewed other agents' interviews of suspected sex offenders.

SA Isom said she testifies from her experience working on cases and investigating crimes against children. She does not collect data. She could only recall one case that she was asked to review in which the information that she had at that point did not appear to be grooming.

SA Isom agreed that over her nineteen years as an FBI agent, she has noticed that texting is an increasingly common form of communication. She did not know if it is common for jurors to text but agreed that texting is a common form of communication. She stated that her children do not text because they do not have cellphones. She also agreed that people commonly use social media. SA Isom said she was not surprised to hear that 220 million people in the United States use Facebook. She agreed that people meet potential paramours online and that dating applications are available online. SA Isom agreed that there is not a single profile for a child predator. She agreed that it is difficult to put complex human behavior into categories and that people have different reasons for their decisions. SA Isom agreed that one could not know with certainty that someone is a child predator based on specific traits.

SA Isom stated that she has testified before a grand jury, at a preliminary hearing, and as a fact witness at trial. She said she has never testified as an expert witness at trial. She has testified before a grand jury twice, once in a case involving child sex abuse and once in a case involving child pornography.

### III. ANALYSIS

"Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell*

5

*Dow Pharmaceuticals Inc.*, 509 U.S. 579, 592 (1993) (citing Fed. R. Evid. 701-703). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,
>
> (b) the testimony is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. *Daubert* 509 at 589, 597. As to scientific knowledge, the court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. *Id.* at 589. In *Daubert,* the Supreme Court provided several key considerations to guide courts in their gatekeeping role: (1) Can or has the scientific knowledge been tested, (2) Has the given theory or technique been published or the subject of peer review, (3) Does a known error rate exist, and (4) Does the theory enjoy acceptance in the particular field. *Id.* at 593-94.

Although *Daubert* focused on the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995). The trial court's objective "is to make certain that an expert, whether basing

6

Case 3:20-cr-00058-KAC-HBG   Document 83   Filed 01/28/22   Page 6 of 15   PageID #: 353

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.  Although the general principles established in *Daubert* apply to all experts, the enumerated considerations may or may not apply to a particular non-scientific expert.  *Id.* at 149.  The trial judge enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case.  *Id.* at 153.

In assessing the propriety of expert testimony, the Court examines whether the expert is qualified, the testimony will help the jury determine a fact at issue, and the testimony is reliable. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 528-29 (6th Cir. 2008), *cert. denied* 556 U.S. 1152 (2009.  The party offering the expert, here the Government, must show by a preponderance of the evidence that the proposed expert testimony satisfies these requirements.  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir.) (citing *Daubert*, 509 U.S. at 592 n.10), *cert. denied*, 534 U.S. 822 (2001).  With this framework in mind, the Court turns to the issues surrounding the admissibility of the testimony of SA Isom.  Defendant contends that SA Isom's proposed testimony is irrelevant, unreliable, and unfairly prejudicial to an extent that overshadows its probative value. The Court examines each of these arguments in turn.

A. **Relevance and Assistance to Jury**

Defendant first contends that SA Isom's proffered testimony on grooming will not help the jury to understand the evidence or to determine a fact at issue and, therefore, is not relevant.  He asserts that the relationship between Defendant and the alleged victim is unique to this particular case and will be explained through the testimony of lay witnesses.  He contends that the jury is capable of evaluating this evidence without an expert.  He argues that the jurors will be able to

7

determine whether Defendant's behavior constituted grooming or was predatory based upon their experiences with interpersonal relationships and common knowledge.

The Government responds that SA Isom's testimony on the behaviors that constitute grooming and their effect on the child victim will assist the jury in evaluating the text messages between Defendant and the teenage victim. It asserts that federal courts generally permit expert testimony on grooming behavior relating to sexual offenses involving a child. The Government emphasizes that SA Isom will not testify regarding whether Defendant Miller was grooming the victim in this case for sex and will not view the text messages between Defendant and the victim.

At the evidentiary hearing, Mr. Moffatt argued that grooming has been defined in Sixth Circuit case law and that jurors can determine whether behavior constitutes grooming, based on their own experiences. He said that grooming is not an element of any of the charges in this case. Mr. Moffatt stated that proper expert testimony explains something outside the average juror's experience, such as striations on a bullet, but matters of interpersonal relationships, like are at issue in this case, fall within the common knowledge and experience of the average juror. He argued that the danger of the proposed expert testimony is that it puts SA Isom's stamp of approval on the Government's theory of the case.

AUSA Morris argued that while the method of communication, here text messages, are within the jury's common knowledge, the behaviors that constitute grooming a minor for sex are not. He argued that SA Isom's testimony will allow the jury to evaluate whether seemingly innocuous communications are grooming or not.

Though not an element of child enticement, "grooming" is a term courts use "to describe a variety of behaviors that appear calculated to prepare a child for a future sexual encounter." *United*

*States v. Fox*, 600 F. App'x 414, 419 (6th Cir. 2015) (approving trial court's modification of defendant's proposed jury instruction on "grooming"). "'[G]rooming' encompasses a wide swath of behavior and courts have not settled on a single definition of the term[.]" *Id.* at 420 (observing that courts have not settled on a specific definition of grooming). Although not addressed by the Sixth Circuit, our sister circuits have uniformly permitted expert testimony on the methods of operation of sex offenders and on grooming in particular. *United States v. Halamek*, 5 F.4th 1081, 1089 (9th Cir. 2021) (finding testimony of FBI special agent from BAU on grooming assisted the jury in understanding how seemingly innocent parental behavior was part of a plan to engage in sexual activity with a child); *United States v.* Batton, 602 F.3d 1191, 1201 (10th Cir. 2010) (holding that psychologist's expert testimony on sex offenders using their position as close friends or family "to groom" their victims to trust them is "specialized information" not with in the average juror's general knowledge); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (concluding that psychologist's testimony on grooming behaviors of sex offenders was admissible expert testimony on the *modus operandi* of sex offenders), *cert. denied,* 549 U.S. 1360 (2007); *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (permitting an FBI agent's expert testimony on the traits of "preferential sex offenders" because "most jurors would have little experience" in how child sex offenders operate), *cert. denied*, 529 U.S. 1011 (2000); *see also Doe through Pike v. Pike*, 405 F.Supp.3d 243, 249 (D. Mass. Sept. 25, 2019) (observing that courts generally find "expert testimony regarding sexual abusers' *modus operandi* can assist the jury" and that "[w]here such testimony has been excluded, it has been because of the qualifications of the expert, not the substance of the testimony"). In *Batton*, the Tenth Circuit held that "[t]he methods sex offenders use are not necessarily common knowledge." 602 F.3d at 1202.

Defendant points the Court to cases from the District of Maine, in which the district court has declined to admit expert testimony on grooming, finding that such testimony is "a matter of common sense" and unnecessary for the jury to understand the evidence.[1] *United States v. Gonyer*, No. 1:12-cr-00021-JAW, 2012 WL 3043020, *4 (D. Me July 24, 2012); *United States v. Raymond*, 700 F. Supp. 2d 142, 155 (D. Me 2010), *affirmed*, 697 F.3d 32 (1st Cir. 2012). In *Gonyer*, the court found the psychologist's proposed testimony on grooming was both unreliable and irrelevant. 2012 WL 3043020, *2-3. Although the government in *Gonyer*, as here, stated it would not ask the expert to apply general grooming behaviors to the facts of the case, the court found the proposed general testimony invited the jury to make inferences about the defendant's intent and character, in violation of Federal Rules of Evidence 704(b) (an expert must not give an opinion on whether the defendant had the required *mens rea*) and 404(a)(1) (character evidence is not admissible to prove conformity on a specific occasion). *Id.* at *3. While observing that many courts have permitted expert testimony on grooming, the court in *Gonyer* stated expert testimony is no longer necessary for the average layperson to know that sexual abuse of children is not just the purview of dirty old men in trench coats. *Id.* (observing that the seminal Seventh Circuit case of *Romero* was decided more than a decade earlier and the current news media is "replete with stories of child

---

[1] At the motion hearing, defense counsel cited to other district court cases excluding expert testimony on grooming. The Court finds in these cases the expert was excluded because of factors unrelated to whether grooming is a matter within the jury's common knowledge. *Wendrow v. Michigan Dept. of Human Services*, 2014 WL 4965961, *2 (E.D. Mich. Oct. 14, 2014) (finding testimony of two social workers on grooming and violation of sexual boundaries was irrelevant to determination of malicious prosecution of parents); *United States v. Schneider*, No. 10–29, 2010 WL 3734055, *3 (E.D. Pa. Sept. 22, 2010) (finding psychologist who treated children not qualified to testify on grooming behavior of adult abusers based merely on her review of articles on the issue). In one of the cases, the court found defendant had not shown the failure to exclude the expert testimony on grooming was prejudicial error. *Mitchell v. Thaylor*, No. A–10–CA–447–LY, 2011 WL 652465, *6 (W.D. Tx Feb. 14, 2011) (recommendation of denial of habeas corpus petition).

10

sexual abuse" by trusted religious and extracurricular leaders, family members, and professionals). While not doubting that "the phenomenon of grooming exists," the court deemed it to be a "matter of common sense" for which no expert testimony is needed. *Id.*

In this case, the Court finds that SA Isom's expert testimony on the grooming behaviors of sex offenders and their effect on the child victims and the victims' caregivers is appropriate and likely not within the knowledge of the average layperson. While the Court agrees that matters of interpersonal relationships are well within the ken of the ordinary juror, here SA Isom will testify about counterintuitive behaviors, i.e., how sex offenders and their child victims behave in ways that are contrary to common experience and why. The Court finds this testimony is particularly probative in this case because Defendant intends to challenge the veracity and consistency of the alleged victim's statements about the offenses [see Doc. 37, pp. 5-6]. Moreover, the undersigned disagrees that SA Isom's testimony infringes on the jury's province of determining intent or is somehow improper character evidence. Instead, her proposed testimony on grooming behaviors and their effects educates the jury on the effects of seemingly innocuous or counterintuitive behaviors and puts the jury in a better position to evaluate the factual testimony.

The Court cautions that SA Isom's testimony is limited to the grooming behaviors of sex offenders in general. She may not apply that testimony to the specific facts in this case or testify whether Defendant Miller engaged in grooming behaviors. The Government states that it will not elicit this testimony from SA Isom, and SA Isom testified that she has not viewed the communications between Defendant Miller and the alleged child victim in this case. Accordingly, the Court finds the testimony of SA Isom on grooming, limited as described here, is relevant and will assist the trier of fact.

11

## B. Reliability

Defendant argues that SA Isom's testimony is not reliable. He argues that her proposed definition of grooming is vague and her method of analysis and the way she reaches her conclusions is difficult to discern. He also contends that the Government has not carried its burden of demonstrating that SA Isom's opinions are based on the reliable application of an accepted method of analysis. Defendant asserts that the Government has not provided any data or statistical information to show SA Isom's testimony is based on scientific, technical, or specialized knowledge, nor is there any way for Defendant or the jury to evaluate a margin of error for SA Isom's opinions. Defendant maintains that because every sex offender behaves, interacts, and offends differently, the behavior of a sex offender defies a common definition. He contends that SA Isom's purported expert testimony would confuse the jury or cause it to rely on the opinions of a law enforcement officer, rather than determining the facts on its own. In oral argument, Defendant asserted SA Isom's opinions on grooming are based on her experience of prosecutions only and not based upon data or science.

The Government responds that expert testimony on grooming requires specialized knowledge. *Halamek*, 5 F.4th at 1089 (finding testimony of FBI agent on grooming was reliable). In *Halamek*, the proffered expert was a child forensic interviewer with the FBI, whose opinions on grooming behavior were based on interviewing more than 3,000 victims of child abuse, the majority being victims of child sexual abuse, and on her training. *Id.* at 1086. The court found the agents "extensive experience interviewing victims" qualified her "to testify about the relationships those victims tend to have with their abusers." *Id.* at 1088. Thus, the court found the agent's testimony was reliable and properly admitted. *Id.* at 1089 (finding no objection or error in agent relying on definition of grooming from the BAU).

"Repeated firsthand observations may provide a witness the specialized knowledge and experience he needs to testify as an expert." *United States v. Stapleton*, No. 12–11–ART–(1),(2),(4), 2013 WL 5966122, *3 (E.D. Ky Nov. 8, 2013) (citing *Berry*, 25 F.3d at 1349-50). In *Stapleton*, the court found that a detective could testify about the "features drug investigators usually find in pill mills" based upon his training and fourteen years of experience in narcotics investigations. *Id.* (finding medical expertise was not necessary for testimony on the general characteristics of a pill mill).

In the instant case, the Court finds that SA Isom's testimony is based upon the specialized knowledge she has gained as an FBI agent investigating cases of child sexual abuse and particularly in her work in the BAU. SA Isom is certified to conduct behavioral analysis for the FBI, has investigated hundreds of child sex offense cases, and interviewed and reviewed interviews of numerous child sex offenders. As a probation officer, SA Isom supervised juvenile sex offenders. The Court finds SA Isom's repeated and extensive firsthand observations of grooming provide her the specialized knowledge she needs to testify as an expert in the instant case. Accordingly, the Court finds her testimony is reliable.

C. **Probative Value vs. Unfair Prejudice**

Defendant Miller argues that even if the Court finds SA Isom's testimony is relevant and reliable, her testimony should be excluded because it fails the Rule 403 balancing test. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In *Daubert*, the Supreme Court recognized that the balancing test in Rule 403 applies to expert evidence. 509 U.S. at 595. Defendant contends that SA Isom's definition of

13

grooming differs from that which the Sixth Circuit recognized in *Fox*, 600 F. App'x at 419-20.[2] He argues that the jury's exposure to conflicting definitions of grooming could confuse the jury or prevent it from following the Court's instructions.

First, the Court disagrees with Defendant that the court in *Fox* approved a particular definition for grooming. To the contrary, the court observed that there is no definition or jury instruction for grooming in the Sixth Circuit. *Fox*, 600 F. App'x at 419-20. Second, the *Fox* court's description of grooming as "a variety of behaviors that appear calculated to prepare a child for a future sexual encounter" and as "encompass[ing] a wide swath of behavior" resonates with SA Isom's description of grooming as a "constellation of behaviors" designed to gain the child's cooperation and trust for a sexual encounter. Thus, the Court finds SA Isom's characterization of grooming does not conflict with the descriptions provided in the case law.

Defendant also argues that the danger of permitting SA Isom's testimony is putting an expert stamp of approval on the Government's theory of the case. However, the Court finds that the limitation of SA Isom's testimony to grooming behaviors and the goals and effects of grooming in general prevents the specter of unfair prejudice raised by the defense. SA Isom cannot testify about any of Defendant Miller's actions or the specific communications between Defendant and the alleged minor victim. The jury must determine whether Defendant's actions and the communications in this case constitute grooming. Moreover, as discussed above, the Court finds

---

[2] Defendant also cites to *United States v. Roman*, 795 F.3d 511, 518 (6th Cir. 2015), for the premise that the Sixth Circuit has adopted a specific definition or jury instruction for grooming. In analyzing whether defendant took a substantial step to entice a minor to engage in sex, *Roman* includes a parenthetical, quoting from *Fox* that "'courts have used the term [grooming] to describe a variety of behaviors that appear calculated to prepare a child for a future sexual encounter.'" *Id.* The undersigned questions whether this citation amounts to the creation of a jury instruction for grooming.

that SA Isom's testimony on the counterintuitive and self-victimizing behaviors of victims of child sex abuse is particularly probative in this case, in which Defendant will challenge the victim's credibility.

After carefully examining and limiting the proposed expert testimony in this case, the Court finds that its significant probative value is not outweighed by the danger of jury confusion or unfair prejudice. Thus, the Rule 403 balancing tips in favor of admitting SA Isom's testimony.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that SA Isom may properly provide expert testimony on grooming a child for a future sexual encounter. Defendant's Motion to Exclude Expert Testimony of FBI Agent Adrienne Isom [**Doc. 79**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge